THE STATE OF KANSAS, *ex rel.* J. W. GREEN, *Co. Att'y of Douglas Co.,* v. THE LAWRENCE BRIDGE CO., *et al.*

1. THE LAWRENCE BRIDGE COMPANY, *Dissolved.* The corporation known as the Lawrence bridge company, organized under an act of the territory of Kansas, approved February 9, 1858, and the acts amendatory thereto, with the exclusive right and privilege of building and maintaining a bridge across the Kansas river at the city of Lawrence, was dissolved in twenty-one years from said February 9, 1858, by expiration of the time limited for its continuance by the special statute under which it was created.

2. SEC. 25, CH. 23, GEN. STAT., *Construed.* The provisions of ¿ 25, chapter 23, General Statutes, are invalid and void so far as they attempt to authorize corporations organized under special acts of the territory of Kansas to continue in the enjoyment and exercise of the powers, privileges and franchises conferred on them by their special acts of incorporation without any limitation as to time, as in conflict with ¿ 1 of article 12 of the state constitution.

3. THE SAID BRIDGE, *a Public Highway.* In 1863, the Lawrence bridge company constructed a bridge over the Kansas river at the city of Lawrence, for the convenience of the public, in the hope of profit to be derived from tolls, as authorized by its special charter. Since 1863, the bridge has been used as a thoroughfare, uninterruptedly and without molestation, except tolls have been demanded and taken from all persons crossing the bridge. The corporation had no property in the approaches to the bridge, nor in any of the lands on which it was built. The bridge is an immovable structure, and an extension of the highway over the Kansas river. *Held,* That the bridge is a public highway. When the corporation expired by limitation, its franchise or license to demand or take tolls expired; and thereafter and at this time the free use of said common highway is in the public.

*Original Proceedings in Quo Warranto.*

THE petition herein was filed in this court February 19, 1879; the answer thereto, by the *Lawrence Bridge Company*, C. W. Babcock, Edward Thompson, Jerre Brooks, and Charles Pearsall, the defendants, was filed March 21, 1879; and the reply thereto, April 21, 1879. The act incorporating said bridge company, pleaded in the second defense contained in the defendants' answer, is as follows:

*"Be it enacted by the Governor and Legislative Assembly of the Territory of Kansas:*

"SECTION 1. That the exclusive right and privilege of building and maintaining a bridge across the Kansas (Kaw) river at the city of Lawrence is hereby granted for the period of twenty-one years to C. W. Babcock, S. B. Prentiss, James Christian, Josiah Miller, Joel K. Goodin, Marcus J. Parrott, James F. Legate, or their assigns, and such persons as may be associated with them for that purpose.

"SEC. 2. Said C. W. Babcock and the other persons named in the foregoing section, and their associates, or a majority of them, are hereby authorized to form a company to be known as the Lawrence bridge company, the capital stock of which shall be three hundred and seventy-five thousand dollars, to be divided into shares of one hundred dollars each; and shall have power to prescribe by-laws for the regulation of said company, receive and collect subscriptions to such capital stock, establish and collect tolls for crossing said bridge, sue and be sued, and hold and convey real estate adjacent to said bridge sufficient for the purposes herein mentioned, not to exceed one hundred and sixty acres, or a quarter-section.

"SEC. 3. The rates of toll on said bridge shall be such as shall be prescribed by the board of county commissioners of Douglas county, and said bridge shall be constructed so as not to prevent the navigation of said river by steamboats.

"SEC. 4. Unless said bridge shall be commenced within three years, this act shall be void. An act entitled 'An act to incorporate the Lawrence bridge company,' approved February 17, 1857, is hereby repealed.

"This act to take effect from and after its passage.

    (Signed)             "G. W. DEITZLER,
             "*Speaker of House of Representatives.*

"Approved Feb. 9, 1858.

"J. W. DENVER,           C. W. BABCOCK,
    "*Acting Governor.*          *Pres't of Council.*"

Section 25 of chapter 23 of the act entitled "An act concerning private corporations," approved February 29, 1868, is as follows:

"SEC. 25. Any corporation heretofore organized and now in existence, under any general or special law of the territory or the state of Kansas, may, by a vote of its board of directors, accept any or all the provisions of this act, and have and exercise all the rights, powers and privileges conferred by this act, by filing a copy of their acceptance with the secretary of state, whereupon that portion of their charter inconsistent with this act, or the portion accepted, shall cease to be applicable to such corporation; and they shall have the exclusive right to carry out the objects of said corporation, as described in their act of incorporation or certificate filed with the secretary of state, if acting under a general law within the limits and boundaries described in said act of incorporation, or certificate, as the case may be, without any limitation as to time, and shall possess all the privileges and franchises conferred by their act of incorporation or certificate filed with the secretary of state, not abandoned in the copy of acceptance of any or all the provisions of this act."

All other necessary facts, pleadings and proceedings are stated in the opinion. July 10, 1879, the case was tried and submitted, and September 24, 1879, the opinion was filed herein.

*J. W. Green,* county attorney, and *J. P. Usher,* for plaintiff:

If by intendment it can be held that a corporation was authorized which should exist during the time the license to build and maintain the bridge ran, then the corporation was dissolved on the 9th day of February, 1879, which was the day the license expired. If it be contended that the act chartered a company, or authorized the organization of a chartered company, it is in vain to contend that such a company had perpetuity. The most that can be said for defendants in this respect is, that the company endured either for ten years or twenty-one years, during which time, if a corporation, the powers conferred by the act might be exercised. The act in terms licensed the erection of a bridge, and provided for the taking of tolls as the commissioners of Doug-

las county might prescribe. But the defendants procured an act of the legislature of the state of Kansas, in 1863, specifying what tolls they might take. This act was plainly unconstitutional, and void. (4 Kas. 124; 5 id. 603; 20 Ohio St. 18, 36; 2 Dillon, 353, 376.)

The defendants, assuming to be a corporation, on the 8th day of February last (one day before the license for their bridge expired) adopted so much of chapter 23 of the General Statutes of Kansas as was not inconsistent with the act of the territorial legislature before referred to conferring the license. The object of this, as declared by the defendants, was to perpetuate the pretended corporation for all time; and, in perpetuating it, also to perpetuate the license, which they vainly supposed they could do by virtue of the 25th section of the act concerning private corporations. If it were possible to conclude that, by the action of the defendants on the 8th day of February last, they accepted all the provisions of § 25, it will not help them; for by the repeated decisions of this court, it is not competent for the legislature, under the constitution, to extend or increase the powers of a corporation created or existing under a special law; and the words "without any limitation as to time" are not to be construed so as to confer the power to exercise exclusive right to maintain the bridge and demand tolls of the public forever. The license to build and maintain the bridge and take tolls was but for twenty-one years. The bridge was constructed in a public highway, and all the time belonged to the public.

The right of the defendants in the bridge was a possessory right, a right which they could possess so long as they kept the bridge in repair. They had no property in the approaches to the bridge, or in the bridge itself, only as above stated. Upon the expiration of their franchise, the right to possession, which had been granted them by the act of 1858, ceased — that is, their right to occupy the bridge and take toll, ceased; and it was not competent for the legislature to confer upon them any further privilege to take toll upon this public

highway after their license expired.   The bridge was a public highway, was built for the public, and dedicated to the public use.   In this public property the defendants had but a usufruct, and they were charged with the duties of a usufructuary. The easement was vested in the public, as it is in other common highways.   Every person had the right to pass over it by paying a tax for its support. (27 Conn. 641.)   Upon the resumption of the franchise the easement was still in the public, disburdened of tolls, but otherwise unaffected. (Angell on Highways, p. 7; 27 Conn. 641; 12 Metc. 458.)

The only difference between a common highway and a toll-road is the manner in which the expenses attending the construction and maintenance are defrayed. (Angell on Highways, p. 8, § 9; 16 Pick. 175; 49 Ill. 493; 3 Barb. 459, 466; Cooley's Const. Lim. 533, 546; 2 Ohio St. 419, 427; 12 Metc. 458; 4 Comst. 431; 3 Wall. 654; 4 id. 270; 20 Johns. 742.) And in analogy to toll-roads are toll-bridges; these are highways.  Angell on Highways, p. 32, § 7; 2 Edw. (N. Y.) Ch. 212.   That the easement and property in the Lawrence bridge, upon the expiration of the franchise granted to C. W. Babcock and his associates, were in the public, see *Central Bridge Corporation v. City of Lowell*, 15 Gray (Mass.), 114; 8 Nev.; 12 Metc. 458; 26 Pa. St. 307; 9 Barb. 173; 16 Pick. 176; 4 N. Y. 431.

It was beyond the power of the legislature to bestow upon the defendants the right to take tolls for passing the bridge after their license expired.   The attempt to confer such a right would be in violation of that clause of the constitution of the United States which forbids the enactment of any law which impairs the validity of contracts.   The contract was, that in consideration that the defendants would erect a bridge for the public, and maintain the same for twenty-one years, they should have the right, during that period, of collecting tolls from all persons using the bridge.   The claim now is, that the contract has, by indirection, been changed.

This bridge being within the city of Lawrence, the fee-simple title to the land, and also the property in the bridge,

are in the county commissioners of Douglas county as a body corporate. (12 Kas. 275.) The commissioners are a body corporate, and have identity as such corporation the same as an individual, and it is no more competent for the legislature to prolong a use of the property of such corporation, appending to such use the right to take toll, than it would be for the legislature to devote the property of an individual to the use of another. The claim is, that the legislature had the right to perpetuate a burden upon the corporate property of the county. If it be not a burden, the sufferance of which is an advantage to the defendants, they would not be here claiming the right.

The Lawrence bridge is a highway by dedication. The defendants, under contract with the state of Kansas, in the fall of 1863 built and completed the bridge across the Kaw at Lawrence, and opened it to public travel. The public at once took possession thereof as a highway across the river, and have ever since enjoyed it as such. The public have, by a direct tax levied upon them ever since, kept it up, and in good repair, and have paid their contractors large profits for performing this work. The public have done a large amount of work upon the approaches to said bridge—in raising the grade, macadamizing the same, laying sidewalks thereon, and in 1874, according to the terms of the contract of the city of Lawrence with C. W. Babcock, introduced in evidence, and the evidence of C. W. Babcock, the public expended the sum of $1,500 in raising that portion of Massachusetts street called the Lawrence bridge up to a proper grade with the rest of the street. The defendants sat complacently by and saw the work go on. They offered no objection; did not warn the public that the bridge was their private property, and that they denied the right of the public to a highway across the bridge; and they are now estopped to deny that the bridge is not a highway dedicated to the public use. (47 Ill. 493; 17 id. 421; 65 id. 430; 69 id. 328; 64 id. 95; 6 Pet. 431; 22 Wend. 425; 13 Wis. 164; 9 id. 240; 22 Iowa, 469.)

This bridge is also a highway by prescription. The pub-

lic have traveled it since the fall of 1863 continuously, with a claim of right; and this, within the authorities, makes the bridge a highway by prescription. (14 Kas. 313; 18 id. 386.)

*Geo. J. Barker,* and *Clough & Wheat,* for defendants:

By § 25 of the "act concerning private corporations," approved February 29, 1868, (Gen. Stat., pp. 196, 197,) any corporation organized before and in existence when that act took effect, under any general or special law of the territory or state of Kansas, was authorized, by a vote of its board of directors, to accept any or all the provisions of that act, and to have and exercise all the rights, powers and privileges conferred thereby, by filing a copy of its acceptance with the secretary of state; all of which said corporation did, by filing such acceptance with the secretary of state, on the 8th day of February, 1879, as stated in defendants' answer, and shown by the certificate read in evidence. We claim that by virtue of that § 25, said company from that time has had the exclusive right to carry out the objects of that corporation, the Lawrence Bridge Company aforesaid, as described in the special acts stated in the petition and answer, *without any limitation as to time,* and that it possesses all the privileges and franchises conferred by said acts of incorporation, that is, those plead in defendants' answer, as none of them were abandoned by the acceptance. 22 Minn. 372; 26 Pa. St. 307, 308; 15 Ill. 20; 1 Blackf. 273, 280; 7 Coldw. (Tenn.) 422; 26 Vt. 717; 8 Nev. 282; 1 Dillon on Mun. Corp., §§ 113, 116, and note; 7 Pick. 345, 493; 5 Bush (Ky.), 459. These cases show that the time of the existence of a corporation, and within which it may have, keep and retain its property and franchises, can be extended. And further, with reference to said § 25, and § 1 of art. 12 of the constitution, in connection with said 22 Minn. 372, see 109 Mass. 103, 112, and cases cited.

Cases concerning toll-roads, turnpikes, and other grounds owned by the state or the public, are not in point on the the question of reversion made by plaintiff. There cannot

be a reversion of a thing to a party who has not a reversionary interest. The state never owned the bridge. It was put up with the money of the bridge company, advanced by the stockholders thereof, and was not erected upon a highway. The state had nothing there before, and of course can have nothing now, nor when the company shall cease to exist.

We claim that when the company ceases to be a corporation, the bridge company will own the bridge; that it will be its private property, with which it may do as it pleases, the same as the owner of any other property may.

The §§ 24 (Laws of 1855, p. 190) and 42 (Gen. Stat., ch. 23) in this brief mentioned, in relation to the property of a dissolved corporation being in the control of the officers thereof, for the use of the creditors and stockholders, would of itself, we submit, prevent any reversion of any kind. These sections are, we submit, in direct conflict with the claim of reversionary interest made by plaintiff, whether the corporation has ceased to exist or not, and whether said § 25, and the acceptance thereunder made by the defendant corporation to extend its franchises, are operative as to this case or not, and whether the state or private persons own the bed of that river.

We further submit, if every other question in this case is against us, that the bridge remains the property of the defendant corporation, and that if people wish to cross it, they can be charged reasonable compenaation therefor; toll rates fixed by law, we suppose would be such reasonable compensation, as indicated by the Maine and Pennsylvania cases hereinafter cited on that point, even if toll as such cannot be collected. And further, if the court shall hold that the defendant corporation has ceased to exist, but that its stockholders own the bridge or any part thereof, under said § 24 and § 42, or if for any other reason defendants cannot be paid for the use of their bridge, either as compensation, or rent, or as toll, then we submit they can close it up; otherwise the state can take the property of defendants without compensation, and this is in conflict with said §§ 24 and 42.

Said sections are of course operative of their own force, even if the state owns the bed of the river; so that, because of those two sections, the stockholders of the bridge company will own the bridge on the dissolution of that corporation, irrespective of the question concerning the ownership of the bed of the river. At the time the defendant corporation put in stones, planks, piers, and the superstructure for its bridge, § 24, p. 190, Laws of 1855, was in force, to secure to the stockholders of the corporation the property thereof after the dissolution of the corporation, and § 42 of the present general corporation act still secures that right given. As the work was done, we submit that defendants ought not to be, by any doctrine of reversion or other technicality, construed out of their bridge property. We claim that, under the statements in the pleadings and the evidence, it appears that the defendant corporation is the owner of the ground on which the bridge stands.

The bridge company not having dedicated the bridge to public use, further than to consent to the use thereof by persons traveling over it on payment of certain tolls, it surely remains the owner of the bridge, subject possibly to a right in the public to cross it, on payment of such tolls as defendants have hitherto permitted.

With reference to the claim of plaintiff concerning the approaches, we request attention to the evidence concerning money furnished by the railroad company, and before the change of grade was made with the consent of the bridge company. The railroad company furnished the money in consideration of the consent of the bridge company to the change, as we understand it, which practically amounts to money furnished by the bridge company for making the changes in the approaches. The other improvements on the approaches, except those made by the defendant company, are too small in amount, and of a nature not affecting even the matter of the approaches, though we do not see how the approaches affect any question involved in this case.

We do not suppose any one will question but that said

corporation act of 1868, including said § 25, is a general law within the meaning of article 12 of the constitution, as applicable to this case, to the effect that said § 25 operates, on the acceptance of parts of said act by the company, to continue the Lawrence bridge company in the exclusive rights, privileges and franchises granted by the charter of that company and the amendments thereto. (94 U. S. 155, 163, 164; 77 Pa. St. 338, 347, 348, 339, 350, 351; 13 Kas. 573, 578, 579, 583; 17 Cal. 547; 20 Iowa, 338, 343; 29 Md. 516; 19 Kas. 234; id. 126; id. 312; 7 Kas. 479.) That § 1, art. 12, of the constitution of this state does not render void § 25 of the general corporation act of 1868, also see 22 Minn. 372; 48 Mo. 470, and § 4, art. 8 of the constitution of Missouri, therein referred to — this in addition to 94 U.S. 155, and cases therein cited.

In regard to the plaintiff's claim that the bridge has become a highway by dedication, we submit that such claim is not well founded. The defendants undoubtedly used said bridge as a toll-bridge more than fifteen years, but surely by using it as a toll-bridge, under a charter, they did not give it away, and there is no evidence to show that they were disposed so to do any more than to permit it to be used on compensation being made each time it was used. They made no dedication thereof at all, but have simply permitted people to travel over the bridge on paying the tolls allowed by § 2 of the act of 1859 (p. 23 of the private laws of 1859), referred to in the pleadings.

The territory of Kansas had, when the charter of the bridge company was granted, a law in force (Laws 1855, p. 190, § 24), to the effect that upon the dissolution of any corporation created by the laws of the territory, the president and directors or managers of the corporation, at the time of its dissolution, should be trustees thereof, with power to settle the affairs, collect the outstanding debts, and *divide the moneys and other property among the stockholders* after payment of debts; and as the state of Kansas still has a law similar in force and effect (Gen. Stat. 1868, ch. 23, p. 200, § 42), it has

come to be the settled law, independent of any such act, that the stockholders should hold the property of a corporation on its dissolution. See Potter's Law of Corp., § 699; 1 Dillon on Mun. Corp., § 113, and note; 18 How. 480; 15 id. 312; 1 Black, 280, 281; 8 Nev. 282; 26 Pa. St. 308.

It was competent, and within the power of the territory as well as the state of Kansas, to pass such laws as said §§ 24 and 42, and in an honest state and territory to permit those who, under franchises and corporate rights given, might have and retain such property as they have acquired by purchase or other payment of money, to carry out the objects of the corporation; and as it is in accordance with the spirit of this age, as indicated by the present morality of the people, taken in the aggregate, that persons, citizens, members of a community who make improvements within the state, for the purpose of performing the duties imposed by corporate acts, may retain the property of the corporation, and have that for which they have paid, we submit that it is contrary to the commonest and plainest principles, as now understood, of morality, equity and common justice, for others to attempt, by any merely technical construction of law or equity, to wrench property which has been thus made from those who have paid therefor, that it may be occupied and enjoyed by others without payment or compensation. Those sections, 24 and 42, were passed for the purpose of preventing the enforcement of any such claim as is made on behalf of plaintiff in this case, so far as the right to property is concerned. Because of those sections, as well as on the principles enunciated in the last-cited authorities, the stockholders of the Lawrence bridge company, when that company shall cease to exist as such, will own the right and fee it has in the bridge, that it is their (the stockholders') property, for the directors to manage and dispose of under those two sections for the benefit of such stockholders. If we are right in this, then the sense of justice is not shocked, but if under any technical rule of law the state, or rather the neighbors of these defendants, can take from them this bridge, without compensation,

and appropriate it to their (such neighbors') use, then we submit that law is not justice, and that a ruling ought not to be made to permit such taking of property without compensation; among other reasons, because the dedication is no greater than is required by the exigencies of the case — that is, at most a dedication on the contingency of payment of tolls each time the bridge is used, according to the rates established by § 2 of the act of 1859. See 7 Wall. 273; 10 Minn. 104; 6 Hill, 407.

Before plaintiff can, in the face of said §§ 24 and 42, take this property for public use, compensation must be made to the defendants to the extent of the value of the bridge. (Section 4, art. 12 of the constitution; Cooley on Const. Lim. 559, etc., and notes and cases referred to.) Because there is no law in force even for making compensation for the taking of a bridge, any statute authorizing the taking of the same without providing for the compensation, if there is any such statute, is void, because of a failure to provide for making compensation. (4 Ohio St. 167, 494; 9 Cal. 595; 6 Wis. 605; 12 id. 213.)

In connection with the above cases, and on the point of difference between the privilege by the defendants given to use the bridge on payment of tolls, and plaintiff's present claim of a right that it be used without payment of tolls, as a free bridge, thus casting an additional burden upon it, and to show that the plaintiff could not, without making compensation, by any law cast such additional burden, that is, the right to cross the bridge *without payment of tolls,* in addition to the above case, see Cooley on Const. Lim. 447, and cases cited; 26 Conn. 249; 16 Wis. 640; 25 N. Y. 526; 39 id. 404; 16 id. 101; 24 id. 655 and 658; 27 id. 205; 23 Iowa, 248; 16 Pa. St. 182.

But it cannot be fairly said the defendants own this bridge, or any part thereof, if the public have a right to pass over it without compensation, or if the defendants have not the right to the use thereof. Indeed, the right to use is in substance *the ownership.* (1 Ash. 136; 9 Mass. 372; 12 Pick. 63;

29 — 22 KAS.

1 Allen, 225; 1 Salk. 228; 6 Johns. Ch. 70; 1 id. 499; 17 Wend. 402; 31 Pa. St. 484; 40 id. 344; 31 N. J. Law, 222;. 46 N. H. 234; 44 id. 469; 17 Vt. 216.)

We submit that plaintiff's claim to the effect, that because defendants offered no objection to persons traveling over and using said bridge on payment of toll, that therefore it has become a *free* highway, and that defendants are therefore *estopped* from now claiming that toll or rent for use, shall still be paid as heretofore by those who wish still to use the bridge, is absurd, defendants not objecting to such use on the same conditions as before.

As to the case in 8 Nev., cited by plaintiff, see the seventh section of the Nevada act before the court, referred to on page 282 of 8 Nev. See also, 6 Nev. 77, from which it appears that the court held to the effect that on a dissolution,. etc., the road vested in the county, etc., because of the affirmative provisions of said § 7 to that effect, the passing of which section was in effect an admission, that but therefor the builders would still have owned the road. Many other cases about, toll and turnpike roads have been decided on statutes showing. what should be done therewith.

On page 4 of its brief, plaintiff's counsel have incorrectly stated that defendants procured an act in 1863 specifying *what tolls* they might take, and then add that said act was unconstitutional, and void. By reading that act, and § 2 of the act of 1859 amendatory of the bridge company's charter, (Private Laws 1859, p. 23,) it will appear that plaintiff's advisers have made a mistake as to when the rate of tolls was fixed by law. As the territorial law-makers could do so, with the company's assent, the authorities on said page 4 are not applicable.

With reference to plaintiff's claim, to the effect that the aforesaid § 25 is void because of the clause in the constitution of the United States which forbids the enactment of any law impairing the obligation of contracts, we submit that the Lawrence bridge company and its stockholders are one party,. and the state of Kansas, successor to the territory of Kan-

sas as to every matter involved in such question, is the other party to the contract made and shown by the charter of the Lawrence bridge company and the amendments thereto, and therefore that part of the state of Kansas urging this prosecution may not complain of what the state thus did.

The commissioners mentioned in plaintiff's brief have nothing to do in this matter; and we submit, there is no reason or excuse for claiming that either the county of Douglas or the city of Lawrence owns the bridge or has any right to the same. The whole matter is between the state and the Lawrence bridge company and its stockholders.

*J. W. Green,* and *J. P. Usher,* for plaintiff, contended, in reply, that it is not a sufficient answer to this question of dedication and prescription, for defendants to say that this bridge is private property belonging to the bridge company, and that they have not permitted any one to pass only as such person would pay a toll therefor, and that it was not their intention to dedicate the bridge for a highway only in this manner. The authorities cited by plaintiff's counsel in their brief filed herein, which defendants did not answer, all hold that a "toll-bridge is a public highway, established by public authority for public use, and is to be regarded as a public easement, and not as private property; the only difference between a toll-bridge and a common bridge being that, instead of being made at the public's expense in the first instance, it is authorized and laid out by public authority, and made at the expense of individuals, in the first instance, and the cost of construction and maintenance is reimbursed by a toll levied by public authority for the purpose." (See 16 Pick. 176, and other authorities cited on page 6 of plaintiff's brief.) We say, then, that this bridge being a public highway thrown open to the public, the public being permitted to use it, and using it for more than fifteen years, the presumption is conclusive that it is a highway by dedication.

In speaking of a plank road, in 47 Ill. 495, Chief Justice Breese uses the following language:

"The plank road was unquestionably a public highway. By the act of constructing it and opening it for use, and being used on payment of tolls, it was as emphatically dedicated to the public as it could have been by a deed of dedication acknowledged and recorded. The very purpose of constructing the road carries with it, when constructed, a dedication."

The uninterrupted use of the bridge for this length of time would constitute it a highway by dedication. (31 Conn. 308; 29 id. 157; 25 Wis. 99; 27 Ill. 414.) To make this dedication more complete, the public, by its proper agents, with the knowledge, at the instance and by the request of these parties who now claim to be the owners of this highway, laid out and expended large sums of money in repairing this bridge, raising it to a proper grade, and did much labor in repairing the approaches. This of itself is one of the highest proofs of dedication. (23 Minn. 515; 28 Wis. 148; 6 Otto, 716.)

We feel inclined to agree with the doctrine laid down in 7 Wall., 10 Minn., and 6 Hill, cited by the defendants on the 16th page of their brief, and many other authorities to the same effect. The principle contended for, as we understand it, is, that when a dedication is made for a specific and limited purpose, the subject of the dedication cannot be used for another and different purpose—as, when a plot of ground is dedicated for a public square, it cannot be diverted by the public to any other purpose. What are the facts in this case? The Lawrence bridge was dedicated to the public for a highway. True, it was subject for a period of twenty-one years to a franchise which allowed certain parties to collect a toll from any and every person crossing it; nevertheless it was a dedicated highway, and when the twenty-one years passed, the franchise expired, the toll-gatherer's occupation was gone; but the bridge is a highway by dedication still, relieved of this incubus, and it cannot be diverted from the use to which it was dedicated. It was not a highway dedicated for all time to the use of any person who had money to pay for the use of it, but only for such a length of time as this franchise lasted, and when the franchise expired it remained a highway,

which cannot be converted into the personal property of any individual, set of individuals, or a corporation, for the purpose of obtaining money in the way of tolls from the public.

In regard to the claim of defendants under § 24 of ch. 28, Laws 1855, and § 42, ch. 23, Laws 1868, we say that said sections do not apply to the Lawrence bridge. This property, as we have shown, did not belong to these defendants, but to the public, defendants having simply a franchise for twenty-one years to take toll. If it were not for the objection hereafter noticed, these sections might be said to apply to the toll-house, and such other property as this corporation, if any there was, might have outside of the bridge, and not necessary thereto for the enjoyment of the public, but this property having become and being a portion of the public highway over which the public have an easement, cannot be diverted from such use by any act of defendants; it is not such property as the directors take as trustees for the benefit of a defunct corporation. But if this position is not correct, the defendants are not benefited, because of the repeal of the law of 1855 by ch. 89, Laws of 1859, without any saving clause; and further, because the corporation, if any there was, was dissolved by § 67 of ch. 36, Laws 1859, and if not thus dissolved it expired at the end of ten years, to wit, on the 9th of February, 1868, being governed by § 1 of ch. 28, Laws 1855, and the ten years expiring prior to the passage of § 42, ch. 23, Laws 1868. The repeal of the law of 1855 would leave this corporation subject to the common-law rule in regard to all its property, and it having expired before the reënactment of this section, it would still be left to the common-law rule.

The opinion of the court was delivered by

HORTON, C. J.: This is an action in the nature of *quo warranto,* brought originally in this court by the state of Kansas, *ex rel.* James W. Green, county attorney of Douglas county, as plaintiff, charging C. W. Babcock and his associates with wrongfully assuming to exercise corporate rights

as the "Lawrence Bridge Company," and with claiming and using, without any lawful warrant, grant, or charter, the liberties, privileges and franchises of having and maintaining a bridge over and across the Kansas river at the city of Lawrence, and of asking, demanding and taking certain tolls and duties of and from all persons crossing, passing over, and using the said bridge. The petition also alleges that the bridge is a highway across the said river, at Lawrence, and the only means accessible to the public of crossing the river for many miles on either side of the bridge. The plaintiff asks that the defendants be enjoined perpetually from exercising corporate rights as the "Lawrence Bridge Company;" from demanding or receiving tolls; from obstructing or removing the said bridge or highway, and from all interference therewith. To the petition of plaintiff, the defendants pleaded that, by the act of the late governor and legislative assembly of the territory of Kansas, entitled "An act to incorporate the Lawrence Bridge Company," approved February 9, 1858, the exclusive right and privilege of building and maintaining a bridge across the Kansas river at the city of Lawrence was granted, for the period of twenty-one years, to defendant C. W. Babcock and others, or their assigns, and such other persons as might be associated with them for that purpose, and that they and their associates, or a majority of them, were authorized to form a company to be known as the "Lawrence Bridge Company," with capital stock to the amount of $375,000, in shares of $100 each, and power was given by that act to prescribe by-laws for the regulation of said company, receive and collect subscriptions to such capital stock, and establish and collect tolls for crossing said bridge; that under said act and certain amendatory acts thereto, the said C. W. Babcock and his associates duly organized the Lawrence bridge company, and before October 1st, 1863, constructed and completed the said bridge across the Kansas river, at Lawrence, at the cost and expense of $75,000, and have ever since maintained and been in the possession of it; that to continue and perpetuate the existence

of the Lawrence bridge company, with all the privileges and franchises conferred upon it by the provisions of the said act of incorporation of 1858, and acts amendatory thereto, the corporation on February 8, 1879, by a vote of its board of directors, accepted all the provisions of the act of the legislature of the state entitled "An act concerning private corporations," approved February 29, 1868, and all acts of the legislature of the state amendatory to that act, applicable to the exclusive right and privilege of building and maintaining a toll-bridge across the Kansas river at Lawrence, and the collection of tolls, but said corporation did not abandon, by such acceptance, any privilege or franchise conferred upon it by its acts of incorporation, consistent with the provisions of the general incorporation act of 1868, and that therefore by virtue of § 25 of said general incorporation act of February 29, 1868, (Gen. Stat. 196, 197,) and by the filing of the said certificate of acceptance, the bridge company, from February 8, 1879, has had the exclusive right to carry out its objects, as described in the special acts of its incorporation, without any limitation as to time, and is still the owner of the bridge, with all its original franchises and privileges, including the franchise of being a corporation and the taking of tolls. Some other matters are stated in the answer, but it is unnecessary to refer more fully to the defenses. The twenty-one years given by the special act of Feb. 9, 1858, incorporating the Lawrence bridge company, within which it had the right to build and maintain a bridge across the Kansas river at Lawrence, and collect tolls on such bridge, expired before the commencement of this suit. Hence, the first and important question which is presented for our consideration is, whether this company was continued and perpetuated as an incorporation for all time, with all the privileges and franchises originally conferred under its special charter of February 9, 1858, and the amendments thereto, by the action of its board of directors accepting, on February 8, 1879, certain provisions of the general act of 1868 concerning private corporations, and forthwith filing a copy of such acceptance with

the secretary of state? This inquiry leads to an examination of § 25, ch. 23, Gen. Stat., and necessarily compels us to pass upon the validity of so much of that section as attempts to authorize corporations organized under special laws of the territory to continue to enjoy and exercise all their powers, privileges and franchises originally conferred, for an indefinite period beyond the limit of their chartered existence.

Before the adoption of the constitution, the practice was to create corporations by special laws. This practice resulted in partial, vicious and dangerous legislation. To correct this existing evil, and to inaugurate the policy of placing all corporations of the same kind upon a perfect equality as to all future grants of power, of making such law applicable to all parts of the state, and thereby receiving the vigilance and attention of its whole representation, and finally, of making all judicial construction of their powers, or the restrictions imposed upon them, equally applicable to all corporations of the same class (*Atkinson v. Railroad Company*, 15 Ohio St. 21), it was ordained by § 1, art. 12 of the constitution, that "the legislature shall pass no special act conferring corporate powers. Corporations may be created under general laws; but all such laws may be amended or repealed." These provisions are clear and explicit; they are a limitation upon the legislative power of the state. Any act expressly violative of these provisions would be void, and the well-recognized rule that what may not be done directly cannot be done indirectly, is as applicable here as elsewhere. Constitutional provisions would be of little value if they could evaded by a mere change of forms. We may look, therefore, to the substance, purpose and effect of said § 25 in determining its true character. While the corporation act of ch. 23, Gen. Stat., purports to be a law of a general nature, having a uniform operation thoughout the state, § 25 thereof occupies an anomalous position. It is *sui generis*. It is virtually separate and distinct from the other provisions of the chapter, and entirely independent. That it attempts to confer corporate powers, is conceded.

Sec. 25, ch. 23,
Gen. Stat.,
construed.

If sustained at all, it must be on the basis that it is a general law within the meaning of art. 12 of the constitution. Yet this section, if effective, confers corporate powers which are special to separate corporations, chartered by special acts of the territory of Kansas, and which powers are not granted to any other corporation, and no other corporation can come into its class or obtain its privileges or immunities. No corporation organized under the other provisions of the general incorporation law can obtain the powers and franchises attempted to be granted to territorial corporations by this section. It may be fittingly described as an omnibus act, loaded to overflowing with special charters — some good, others bad, and many vicious; and each of these charters which is sought to be continued by this act confers corporate powers and privileges distinct, exclusive and separate from every other corporation, and these powers and privileges do not belong or attach to all corporations of the same class, nor can all corporations of the same class upon the same terms enjoy like powers and privileges. It is too palpable for argument, that article 12 is a sure and perfect impediment to the adoption by the legislature of a special act conferring corporate powers. If it may obstruct the passage of one such act, is it not equally as effective to resist the passage of a score or more acts of like character, notwithstanding the attempt be made, as by § 25, to give them existence and vitality under the form of a general law? Legislation of the class attempted in § 25 is most harmful. An evasion of so important a provision of the constitution ought not to be favored in any degree. The abuses and corruptions in legislation are mainly the result of private and special laws, and the remedy, and the only remedy which has proved effectual to prevent this, is found in severely depriving the legislature of the power to legislate for any citizen in preference to or at the expense of the whole. *Obsta principiis* — stop the beginnings, and stop them decisively, is very necessary to such legislation as is attempted by said section 25. If sustained, it fritters away §1 of art.

12, defeats the object of its provisions, and permits the abuses which it was intended to prevent. If sustained, corporations can again be created or extended in their existence all over the state, with just such powers and franchises as the territorial legislature may have conferred by special charters at its pleasure or caprice, at a time when its power was unrestricted by any such wholesome constitutional provision as is imposed by § 1, art. 12, on the legislative power of the state. If sustained, the legislature can go a step further, and provide that all corporations created with special powers and privileges by special charters, during the territorial years of Kansas, whether organized or not, and whether in existence or not, may at once be rehabilitated with all their original powers and franchises.

Under our construction of said § 25, we do not think it can be denominated a general law in the sense in which these words are used in said art. 12. It directs us to special acts and charters, and attempts to continue them in existence. It does not in itself enumerate the powers of the corporations, but these powers are enumerated in the various special acts to which we are directed by it. It is therefore a plain evasion of the provisions of said art. 12, and fails to be a legal enactment. Such legislation proves rich in every inducement to deception, injustice and evil. It, being void, had no power to continue the Lawrence bridge company in the enjoyment of the exclusive rights, privileges and franchises granted by the charter of that company. Said corporation ceased on February 9, 1879. It was then dissolved, with all the consequences of its dissolution. To prevent any misconception of this opinion, we add that said § 25 does not fail to be a general law merely because it does not operate alike upon all citizens or corporations of the state, for many of our laws fail to do that. Take the case of the general laws for the incorporation of cities. By these laws, certain rights, powers and privileges are conferred upon cities of the first class, of which there is but one in the state; certain other and different powers and privi-

*The Lawrence Bridge Company, dissolved.*

leges are conferred upon cities of the second class, and still different and less upon cities of the third class. Yet in these various laws, every city which is brought within the relations and circumstances provided for, is affected by the law. These acts do not grant to any city powers and privileges which, upon the same terms, do not equally belong to every other city. Whenever a city comes into any class, it has all the powers and privileges which have been granted by the statute to any other city of that class. Thus, when a city of the second class has more than fifteen thousand inhabitants, it obtains and enjoys all the powers and privileges of a city of the first class; so, when a city of the third class attains a population of more than two thousand, it may possess the powers and privileges of a city of the second class. Again, when a city of the first class loses its population until it becomes a city of the second class, it takes the powers of a city of that class; so, likewise, when a city of the second class has only inhabitants sufficient to constitute it a city of the third class, it falls back to a city of the third class. The enforcement of said § 25 would give no like results. The corporate powers which it seeks to confer are special and exclusive. Corporations are not permitted by it to be on an equality nor enjoy powers upon the same terms as belong to other corporations. There is a wide distinction between such an act as § 25 and the act incorporating cities of the first class and other similar acts which have often been held valid by this court.

In view of the inability of the Lawrence bridge company to prolong its corporate existence by virtue of the unconstitutional provisions of § 25 of the general incorporation act of 1868, and its legal dissolution on February 9, 1879, by expiration of the time limited for its continuance by the special act under which it was created, it is important for us to determine what became of the bridge when the franchises of the corporation ceased by limitation. The evidence shows it was completed in the fall of 1863, more than fifteen years ago; that neither the corporation, nor any of the corporators,

ever owned any fee in any of the lands on which it was built, or ever leased any real estate on which it was constructed and maintained; that the approach to it on the south side was from the end of Massachusetts street across the levee (a plat of ground reserved to the public in laying out the city of Lawrence) to the south end of the bridge, and on the north side from Bridge street across a lot belonging to one Sarcoxie, to the north end of the bridge; that it is an immovable structure or extension of the highway over and across the Kansas river; that it was constructed for the convenience of the public, in the hope of profit to the corporation having the franchise; and that, since 1863, it has been used by the public as a thoroughfare, up to the time of bringing this suit, uninterruptedly and without molestation, except as to the taking of tolls. Under these facts, the bridge is unquestionably a public highway. The corporation lived its time out on February 9, 1879. Its franchise to demand

*The said bridge, a public high- way.* and accept tolls then ceased. Thereafter the free use of such public highway would be in the people. They have now the same right to its use as they have to the use of Massachusetts street, or Bridge street, or any other public highway of Douglas county. We do not rest this decision upon the basis that the Kansas river is a navigable stream, and therefore a common highway, and the bridge a part of such highway, although a strong argument can be formulated that in this case the river might be treated as navigable, as the charter giving the bridge company life assumed the river to be navigable, and expressly required of that corporation the construction of its bridge over the water in such a manner as not to prevent the navigation of the river by steamboats, and from the additional fact that, up to 1860, the river was used to some extent for the purposes of navigation. But waiving the question of the navigability of the Kansas river, the Lawrence bridge company, by the manner of constructing the bridge and opening it for use, and having it used for fifteen years as a part of the highway, or as an extension of the highway, over and across the river, on

payment of toll, dedicated it to the public as fully and com-
pletely as it could have been by a deed of dedication acknowl-
edged and recorded. When the license to take tolls expired,
the public took the bridge disburdened of tolls. *Craig v. Peo-
ple*, 47 Ill. 487; *State v. Lake*, 8 Nev. 276; *Central Bridge
Corporation v. Lowell*, 15 Gray, 106; *Thompson v. Matthews*,
2 Edw. (N. Y.) Ch. 212.

There is no hardship in this result. Toll-roads or turn-
pikes and plank roads, constructed under public authority for
public use by incorporated companies, with provisions in the
acts of incorporation for their management, are common high-
ways; and the only difference between them and other common
highways is, that instead of being made at the public expense
in the first instance, they are authorized and laid out by pub-
lic authority and made at the expense of individuals or cor-
porations in the first instance, and the cost of construction
and maintenance is reimbursed by tolls, levied by public
authority for the purpose. (Angell on Highways, §§ 8, 9
and 14.)

By analogy, considering the manner the bridge in contro-
versy was built, its situation and use, it bears a close relation
to toll and plank roads. In this case, the bridge company
has received tolls for over fifteen years, and located as the
bridge has been at a point of great travel and business in-
terests generally, it is very probable that the tolls have been
more than sufficient to repay the cost of its construction and
maintenance. At least, we may assume that this was the hope
of the corporators in accepting the provisions of the charter,
and in constructing the bridge; and we cannot believe they
have been the unfortunate victims of a harsh contract. If
not, no injustice is sustained by them, that the bridge on the
expiration of their franchise or license to take tolls, becomes
free to the use of every citizen, as other public highways. If
the claim of defendants is valid, that the bridge itself is the
private property of the stockholders, to be hereafter managed
by them or through their trustees, then the expiration of the
charter of the corporation would be beneficial rather than in-

jurious to them, for it would emancipate the bridge from the control of the law, and convert the limited privileges of the stockholders into a broad, unbounded license. We do not mean that it could not be ultimately taken and condemned for a highway if it were needed, but unless so taken and condemned they could use it, as other people use their own, run it on their own account, charge what tolls they pleased, close it up or open it when they thought proper, and disregard every interest except their own. This claim of counsel overlooks the fact that the bridge was constructed under authority obtained from the public, and that the public have already paid for it by tolls levied by public authority. In this condition of affairs, the public have some rights in the continuance of the bridge or highway in its present position. Under § 42, ch. 23, Gen. Stat., the officers or managers of the late corporation have full authority to settle the business of the corporation, and divide the moneys and other property among the stockholders; but the bridge being an extension of the highway over the Kansas river and a part of the public highway, is not the property of the stockholders of the late corporation, but is a public road which every citizen has the right to use. The period during which it was lawful for the corporation to take tolls has long since expired, and now neither the officers, managers nor stockholders of said corporation have any further control over the bridge or highway. They cannot obstruct it, or collect tolls, or remove or otherwise interfere with it.

The injunction prayed for in the petition of plaintiff will be granted, and such injunction will be made perpetual. Costs are also adjudged against the defendants.

VALENTINE, J.: I concur with the Chief Justice in the *first* and *second* propositions stated in the syllabus of this case. I have no doubt concerning the unconstitutionality of § 25 of the corporation law of 1868. (Comp. Laws of 1879, p. 220.) For while said section, so far as it applies to this case, is in form a general law, yet it is in fact nothing but an

omnibus special act, attempting to confer corporate powers. With reference to the third proposition of the syllabus, I have such grave doubts that I do not wish to express any opinion.

BREWER, J.: It seems to me that the grave question in this case is as to the unconstitutionality of said § 25. It certainly is in form a general law. It purports to apply not to a single corporation, but to all corporations of a particular class. A law concerning cities of the first class applies at present to only a single corporation, but as it applies to all corporations of that class it is unquestionably a general law. This section not only purports to apply to all corporations of a particular class, but does in fact apply to many corporations. It grants to all such corporations the same power — that of self-perpetuation; and while the wisdom of such legislation may be doubted, yet I am not clear that it is beyond the legislative power. But my associates are clear that the section, so far as this case at least is concerned, is unconstitutional, and that therefore all charter privileges of the defendant have ceased.

It seems to me to follow from this that the plaintiff is entitled to judgment; for I agree with the Chief Justice, that the bridge is a permanent structure on the public highway, and under the authorities, when the franchise to take tolls ceases, the right of the public to use the bridge free from any burden of tolls attaches, without any right on the part of the builders to remove the structure and destroy the highway. The right to take tolls for a specified number of years was the consideration granted by the public to the defendants for the privilege of placing this improvement on the highway, and the former owners have now no more right to remove the bridge than the owners of a turnpike to tear it up after the franchise to take tolls has ceased.