MONTGOMERY COUNTY *v.* CLARKSVILLE & RUSSELLVILLE
TURNPIKE COMPANY *et al.*

[(*Nashville.* December Term, 1907.)

1. **PRIVATE CORPORATIONS.** The fixed limit of existence of a
   turnpike company applies to an amendment of its charter as
   to a toll bridge, when.

   Where a turnpike company was incorporated by a legislative
   act, with power to construct a toll turnpike road from a desig-
   nated place, across a certain river at a bridge then in process
   of construction by some other agency, to another designated
   place, with a fixed period of corporate existence, and after
   the destruction of said bridge, said company procured the
   passage of an act authorizing it to build a toll bridge at said
   point; but without fixing any time for the enjoyment of the right
   to collect toll from the bridge to be so erected, the latter act,
   though not expressly amendatory of the original act, was in
   effect an amendment thereof, and by operation of law it became
   a part thereof, and the limit prescribed by the original act as
   to the turnpike was equally effective as to the right to collect
   tolls over the bridge. (*Post, pp.* 78-81.)

   Acts cited and construed: Acts 1829 (private), ch. 204; Acts
   1865-66 (private), ch. 19.

   Cases cited and approved: Turnpike Co. v. Illinois, 96 U. S., 63;
   State v. Bridge Co., 22 Kan., 438; Bridge Corp. v. Lowell, 15
   Gray (Mass.), 106; State v. Lake, 8 Nev., 276.

2. **TURNPIKE TOLL ROADS.** Difference between them and
   common highways; same rule applies to toll bridges.

   The only difference between a turnpike and a common highway
   is that, instead of being made at public expense in the first
   instance, the turnpike is authorized and laid out by public au-
   thority and made at the expense of individuals, and the cost

of construction and maintenance is reimbursed by a toll levied by public authority for the purpose. Every traveler has the same right to use the turnpike upon paying the toll established by law, as he would have to use any other highway, and the same rule applies to toll bridges. (*Post*, *p*. 81.)

Case cited and approved: Commonwealth v. Wilkinson, 16 Pick. (Mass.), 175.

3. **SAME.** Termination of corporate existence of a turnpike corporation ends the right to exact tolls and leaves the road and bridges free to the public.

Under the turnpike charter and the amendment thereto as stated in the first headnote, the right to exact tolls upon the turnpike, including said bridge, ended with the corporate life and existence of the corporation, and thereafter the public had the right to use the turnpike, including the bridge, without payment of toll, and the company and its successors had no authority to remove the bridge or destroy the road. (*Post*, *pp*. 81-83.

Cases cited and approved: State v. Bridge Co., 22 Kan., 438; Bridge Corp. v. Lowell, 15 Gray (Mass.), 106; State v. Lake, 8 Nev., 276.

4. **SAME.** County may maintain suit to restrain collection of tolls after the right to do so has ceased by expiration of charter of turnpike company.

A county may maintain a suit to restrain the collection of tolls therein on a turnpike, including a bridge, after the right to exact tolls has expired by reason of the termination of the corporate existence of the company chartered and organized to construct the turnpike with the right to exact tolls. (*Post*, *pp*. 83-85.

Code cited and construed: Sec. 5165, subsec. 5 (S.); sec. 4146, subsec. 5 (M. & V.); sec. 3409, subsec. 5 (T. & S. and 1858).

Case cited and approved: Ledbetter v. Turnpike Co., 110 Tenn., 92.

FROM MONTGOMERY.

Appeal from the Chancery Court of Montgomery County.—J. W. STOUT, Chancellor.

SAVAGE & FORT, for complainant.

LEECH & PONDER, for defendants.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

The present bill was filed by the county of Montgomery to enjoin the defendants from collecting toll from persons passing over a bridge which spans Red river at or near the city of Clarksville. In 1829 the legislature of Tennessee passed an act incorporating the Clarksville & Russellville Turnpike Company, and authorizing it to construct a toll or "turnpike road from Clarksville across Red river at a bridge, now building at Barker's Ferry, leading toward Russellville, and to where said road intersects the Kentucky line." There is an intimation in the record that the bridge which was then building, as indicated in this charter, was constructed by the city of Clarksville, and if this be not so, yet we think it clearly inferable from the terms used in the chapter that the bridge with which the turnpike to be

constructed was to connect was being built by some other than the corporation then created.     This bridge, by whomsoever built, was destroyed during the civil war. The turnpike in question was constructed under that charter.     In 1865, in view of the destruction of the bridge, as well as of the fact that one was, if not necessary, at any rate an important link in its turnpike, the Clarksville & Russellville Turnpike Company secured the passage of an act authorizing it to build a toll bridge at the point where the line of its road crossed Red river, and under this authority the present bridge was constructed.     It was provided in the act of 1829, under which this company was organized, that its corporate life should end on the 1st of January, 1899. No limit is fixed for the enjoyment of the right to collect toll from users of the bridge erected under the act of 1865 (Laws 1865, p. 121, c. 19).     Though not an amendatory act in express terms, in effect the act of 1865 is amendatory, and by operation of law it became a part of the original act, and there can be no question that the limit prescribed by that act as to the turnpike was equally effective as to the right to take over the bridge.     *Turnpike* v. *Illinois,* 96 U. S., 63, 24 L. Ed., 651.

On the 19th of December, 1898, five of the stockholders of the Clarksville & Russellville Turnpike Company filed with the register of Montgomery county two applications requesting, respectively, a charter for a corporation denominated the Clarksville & Russellville Bridge

Company, and a charter for the Clarksville & Russellville Turnpike Company, and these charters were granted on the 27th of December, 1898. It is unnecessary to deal further with the new corporation, called the "Clarksville & Russellville Turnpike Company," because after its organization it seems to have made no effort to exercise control over the turnpike constructed by its predecessor in title, but seemingly abandoned the road to the public as a free highway.

The Clarksville & Russellville Bridge Company, however, undertook to purchase the rights of the old Clarksville & Russellville Turnpike Company in the bridge over Red river, and at the time of the filing of this bill was exacting toll from those of the public whose business or pleasure required them to pass over it. One of the questions presented on the record is, had the old company, whose charter was upon the eve of expiration, such an interest in the bridge which it had constructed that it could transfer it to a purchaser with the right to collect toll from the users of it?

Waiving the suggestion made by counsel for complainant that the charter to the bridge company was taken out under the act of 1875 (Acts 1875, p. 240, c. 142, sec. 7), which authorized the incorporation of such a company to construct toll bridges, and not to buy bridges already erected, we are satisfied that there was no transferable interest in this bridge, and that the effort to sell and transfer it was abortive.

The bridge in question was regarded by the original

company as an essential part of its road, and its erection was nothing more than a laying out of a highway, burdened as a matter of course with the legislative grant to charge tolls during the corporate life of the company. "The only difference between a turnpike and a common highway is that, instead of being made at the public's expense in the first instance, it is authorized and laid out by public authority and made at the expense of individuals, and the cost of construction and maintenance is reimbursed by a toll levied by public authority for the purpose. Every traveler has the same right to use it, paying the toll established by law, as he would have to use any other highway." *Commonwealth* v. *Wilkinson*, 16 Pick. (Mass.), 175, 26 Am. Dec., 654; Angel on Highways, p. 8, sec. 9. And in analogy to toll roads are toll bridges. Angel on Highways, p. 32; Elliott on Roads and Streets, p. 21, and cases cited. So there is no doubt but that the right to exact tolls upon the turnpike ended with the corporate life of this company, and there is as little doubt that, upon this turnpike becoming a public highway on the 1st of January, 1899, the franchise to take tolls upon this bridge, which was a part of it, equally ceased. *State* v. *Lawrence Bridge Co.*, 22 Kan., 438; *Central Bridge Corp.* v. *City of Lowell*, 15 Gray (Mass.), 106; *State* v. *Lake*, 8 Nev., 276.

It was insisted in argument for the defendant that, if no more, it bought the material which entered into

120 Tenn—6

this bridge, and that the county, whatever its otherwise legal right might be, could not interfere with the management and control of this property by the bridge company, and if that company saw proper it might tear down and remove the bridge altogether from the point where it stood.     It would hardly be insisted that the Clarksville & Russellville Turnpike Company, incorporated in December, 1898, with a view to the succession to the rights and properties of its predecessor, would be permitted to tear up and remove the material which went into the construction of that turnpike.     During the existence of its predecessor that turnpike was none the less a highway because the public could only make use of it by paying toll for the benefit of those whose capital and time had been used in its construction.     When the time fixed in the charter for the existence of the company had passed, it was still a highway, only disburdened of the duty of persons using it to pay toll for such use.     As said above, we are satisfied no one would insist that the new company, by virtue of its succession, would have a right to obstruct, and especially destroy, the turnpike by the removal of the material which entered into its construction.     We think it equally true that no such right existed in the original company so far as the bridge is concerned, and, when the right to take tolls expired, there immediately arose the right of the public to use the bridge as a free one, without any right on the part of the builders or their successors to remove the structure and destroy the highway.

Cyc., 1076; 22 Kan., 438; 15 Gray (Mass.), 106; 8 Nev., 276.

But the serious question in the case is one raised by the demurrer, which was overruled, but subsequently insisted upon in the answer of the defendant, and that is, grant everything said above, yet Montgomery county cannot maintain this suit.    In other words, the insistence is that this bridge company, asserting the right under its charter to supervise the bridge and take toll from the public, can only be interfered with by the State, acting under section 5165 and subsection 5 of Shannon's Code.    It is doubtless true that in this collateral proceeding the complainant cannot question the regularity of the organization of the bridge company. This, however, is not the purpose of this bill.    Granting that the charter of that company has been properly obtained, and that it has all the powers conferred by the act of 1875 upon such company, the insistence here is that the bridge in question is a free bridge, and that this company has no right to exact tolls from those who pass over it.    If one of the citizens of Montgomery county, and, in fact, if any member of the public declined to pay toll, and was sued for such toll by this company and a penalty incurred by a refusal, on our authorities he would be permitted to defend by showing that the corporation was without right to collect toll. *Franklin & Columbia Turnpike Co.* v. *Campbell*, 2 Humph., 467.

It is true the general rule is that corporate rights can

only be forfeited by a judicial judgment, rendered at the instance of the State which granted the charter; but it does not follow from this rule, says Mr. Elliott in his work on Roads and Streets, "that in a collateral action, such as one to collect toll, the defendant cannot aver that the charter has been forfeited." If it be true that a private citizen, without impinging on this rule, could in his defense show a forfeit of the charter in order to avoid the exaction of toll, then we cannot see how it can be maintained that Montgomery county, to whom is committed under legislative grants the supervision of bridges and highways, cannot maintain the present bill. As has already been said, in this case no more than in that case where the private citizen defends against an action to collect toll, upon the ground that the corporation is without power to charge it, is involved in any respect the right of this corporation to exercise to the full limit all the powers conferred by its charter. If under this charter the company had erected toll gates on the turnpike and claimed the right to receive toll from the public under some sort of succession to the Clarksville & Russellville Turnpike Company, not only would it have been subject to indictment for a public nuisance, but unquestionably the county of Montgomery could have taken steps in the civil courts to remove these toll gates as obstructive to the free use of the turnpike, and it would be no answer to such an action that the county was seeking to do what alone could be done by the State

in a direct action, that is, enforce a forfeiture of corporate rights.

To such a defense the answer would be, as already indicated, that no interference was sought at the hands of the court with the corporate rights of the company, but that the only purpose of the county was to protect its citizens against illegal exactions when they offered to pass over a public highway. It is unnecessary, however to pursue this line of discussion further, inasmuch as the right of the county to maintain this action is distinctly recognized in the case of *Ledbetter* v. *Turnpike Co.,* 110 Tenn., 92, 73 S. W., 117.

The decree of the chancery court maintaining this right, and from which this appeal has been prosecuted, is therefore affirmed.