## The Northern Central Railway Co. *versus* Commonwealth.

1. An indictment will lie against a railroad company for the creation and maintenance of a public nuisance.

2. A turnpike is a public highway, in so far that an indictment will lie against one obstructing it, as for a public nuisance.

3. A railroad company may construct its railway across any established road or way wherever it may be necessary to cross or intersect it, but it must so construct it that it will not impede the passage or transportation of persons or property over said road or way. If it so construct its railway as to be a serious inconvenience and dangerous obstruction to travel along the road or way, it may be indicted therefor.

4. The fact that the Act of Assembly, incorporating a turnpike company gives it a specific remedy for an injury to its rights, does not impair the separate right of the Commonwealth to indict.

May 16th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY and STERRETT, JJ. PAXSON and WOODWARD, JJ., absent.

Error to the Court of Quarter Sessions of *Cumberland county:* Of May Term 1879, No. 178.

Indictment of the Northern Central Railway by the Commonwealth, for nuisance in obstructing a turnpike road by the construc-

tion of its railroad over said turnpike. The defendant pleaded specially that the turnpike was not a public road or highway within the meaning of the act authorizing an indictment for the obstruction of travel on highways ; that the railroad, as now constructed, has been in use for twenty-four years, and that an indictment would not lie as by the Act of February 24th 1806, whereby the company was incorporated, a remedy was provided against the defendant for the non-repair of the road.

The court overruled these special pleas, when the case was put at issue, and a jury returned the following special verdict :

" That the road set out in the indictment as a public highway is a portion of the Harrisburg, Carlisle and Chambersburg turnpike, built by and belonging to the Harrisburg, Carlisle and Chambersburg Turnpike Company, incorporated under the Acts of February 24th 1806 and March 9th 1814, and other supplements thereto.

" That the defendant is the Northern Central Railway Company, incorporated, as to the portion crossing the said turnpike, by the name of ' The Susquehanna Railroad Company,' by Act of April 14th 1851, which, with other railroads, under Act of May 3d 1854, was consolidated into the Northern Central Railway Company.

" That the dirt, clay, stones and embankment mentioned in the indictment as an obstruction to travel and complained of as a nuisance, make the road-bed of said railroad where it crosses said turnpike at Bridgeport.

" That the said road-bed is raised two feet on the west side and four feet on the east side above the natural line of descent of the turnpike at the point of crossing.

" If the ground did not descend naturally, the mound occasioned by the construction of the railroad at the crossing would not produce more obstruction to public travel than necessarily results from a railroad crossing, with a mound of that size and kind on a level road ; but from the nature of the ground, the mound caused by the railroad crossing amounts to a serious inconvenience and a dangerous obstruction to travel.

" The elevation and level of the Northern Central Railway at the crossing is necessary in order to cross the Cumberland Valley Railroad at grade, as now constructed, near the west end of its bridge over the Susquehanna river, the centre of the track of the Cumberland Valley Railroad Company being but sixty-two feet from the centre of the turnpike crossing, and the charter of that company being senior to that of the Northern Central Railway Company.

" To lower the bed of the turnpike so as to allow it to pass under the railroad, would require an expenditure of from $5000 to $8000.

" If the turnpike road made by said turnpike company is a public highway within the contemplation of the law, permitting an indictment for the obstruction of travel on highways, and if the railroad

[Northern Central Railway Co. *v.* Commonwealth.]

company is liable to indictment for obstructing the road in the manner in which they have done in the construction of their road over said turnpike, as herein before set out, then we find defendant guilty in manner and form as it stands indicted; otherwise, not guilty."

The court, Herman, P. J., delivered the following opinion.

"Two questions are presented, by the special verdict in this case, for the opinion of the court. 1. Is the Harrisburg, Carlisle and Chambersburg Turnpike road a public highway within the contemplation of the law permitting an indictment for the obstruction of travel on highways? 2. Is the Northern Central Railway Company liable to indictment for obstructing this turnpike road in the manner in which it has done in the construction of its railroad over it?

"1. To sustain an indictment, at common law, for nuisance in obstructing a road, the road must first be shown to be public and not private, since, no indictment lies for a nuisance unless the offence be to the public generally, as distinguished from a special and limited class of persons. A public road, however, to be thus protected, needs not have been formally accepted by the municipal authorities. It is enough if over it the public have a right to pass and repass, whether freely, or on payment of a fixed toll. Nor does it matter that the road is owned by a private corporation. Supposing that the public has a right, on payment of fixed toll, to travel on it, an indictment for nuisance lies for its obstruction: Whart. Crim. Law, 7th ed., sect. 2414. A turnpike road is a public highway, and an indictment will lie as for a public nuisance against any person placing obstructions thereon: Commonwealth *v.* Wilkinson, 16 Pick. 175. That was an indictment against Wilkinson for obstructing a turnpike road in Pawtucket, by continuing within the limits of such road certain buildings which had been previously erected thereon, and the principal question in the case was, whether a turnpike road is a highway, and whether an indictment will lie against any person, for an obstruction thereon as a public nuisance. Chief Justice Shaw, delivering the opinion of the court, said: 'We think, that a turnpike road is a public highway, established by public authority for public use, and is to be regarded as a public easement, and not as private property. The only difference between this and a common highway is, that instead of being made at the public expense in the first instance, it is authorized and laid out by public authority, and made at the expense of individuals in the first instance, and the cost of construction and maintenance is reimbursed by a toll, levied by public authority for the purpose. Every traveller has the same right to use it, paying the toll established by law, as he would have to use any other public highway.' This language will apply with equal force to the case now under consideration. The Harrisburg, Carlisle and Chambersburg Turnpike

road was laid out and constructed by public authority for public use, under a charter granted by the legislature in pursuance of a system of public improvement adopted by the state at an early day, and must be regarded as a public easement and not as private property. The costs of its construction and maintenance is reimbursed by a toll levied by public authority for the purpose. The company cannot close it to the public nor discriminate in favor of any particular person or class of persons. All have the right, upon payment of the toll regulated by law, to use it as common highway. I am very clearly of the opinion that it is a public highway within the contemplation of the law permitting an indictment for the obstruction of travel on highways.

"2. Is the Northern Central Railway Company liable to indictment for obstructing this turnpike road in the manner in which it has done in the construction of its railroad over it? * * * The Susquehanna Railroad Company, incorporated by the Act of 14th April 1851, was by the provisions of its charter made subject to all the provisions and restrictions of the General Railroad Act, approved 19th February 1849. The Consolidation Act of 3d May 1854, consolidating this and other railroad companies into the Northern Central Railway Company, provides, likewise, that such consolidation company shall be subject to the provisions of the General Railroad Act of 19th February 1849. The 12th section of the Act of 19th February 1849, very clearly points out the duty of the company in the construction of its railroad whenever it shall be necessary to cross or intersect any established road or way. It provides: 'That whenever, in the construction of such road or roads, it shall be necessary to cross or intersect any established road or way, it shall be the duty of the president and directors of the said company, so to construct the said road across such established road or way, as not to impede the passage or transportation of persons or property along the same.' The meaning of this language is plain; there can be no uncertainty about it. The company may construct its railroad across any established road or way, whenever it may be necessary to cross or intersect it; but, in doing so, it must so construct its road across such established road or way as not to impede the passage or transportation of persons or property along the same. If the company so constructs its railway, across any established road or way, as to impede the passage or transportation of person or property over the same, it does, not only, what it has no right to do, but, what the law prohibits it from doing. The Northern Central Railway Company, at this crossing, has so constructed its road as to be a serious inconvenience and dangerous obstruction to travel along the turnpike road, which is an established road or way, and thus has committed an act wholly unauthorized and illegal, and that this is an indictable nuisance, cannot, I think, be seriously

doubted. The offence consists, not in crossing the turnpike road, but in the manner in which the crossing is constructed. The company has the right to cross it, but in doing so, it must so construct its railroad as not to obstruct the public travel or transportation of property over it.

"Corporations, other than municipal, may become amenable to the criminal law for public nuisance and may be indicted therefor: Canal Co. *v.* The Commonwealth, 10 P. F. Smith 367.

"It is the opinion of the court upon the facts found by the special verdict: 1st. That the turnpike road, made by the Harrisburg, Carlisle and Chambersburg Turnpike Road Company, is a public highway within the contemplation of the law permitting an indictment for the obstruction of travel on highways. 2d. That the Northern Central Railway Company is liable to indictment for obstructing the said turnpike road in the manner in which it has done in the construction of its railroad upon it. Therefore, the verdict of the jury must be entered against the Northern Central Railway Company, finding it guilty in manner and form as it stands indicted.

"And now it is entered as the verdict of the jury, that the Northern Central Railway Company, the defendant in this case, is guilty in manner and form as it stands indicted, and thereupon, the sentence of the court is, that the Northern Central Railway Company abate the nuisance set forth in the indictment on or before the first day of April next, and pay a fine of one dollar and the costs of prosecution."

The defendant took this writ, assigning for error the overruling of the special pleas, and in entering the verdict as above.

*John Hays* and *A. B. Sharpe*, for plaintiff in error.—This turnpike is not a public highway: Act June 13th 1836, Purd. Dig. 1284, pl. 99; 73d sect. of Criminal Code, March 31st 1860, Purd. Dig. 336, pl. 108; Harding *v.* Inhabitants of Medway, 10 Metc. 469; 3 Bac. Abr. 493, *Highways;* Wood's Law of Nuisance, sect. 235; Clark *v.* Commonwealth, 9 Casey 114. Where an indictment lies for nuisance in obstructing a public highway, it means a highway laid out under the Act of June 13th 1836. This is not a highway, because it is not so declared by its act of incorporation; the legislature cannot vacate it; it is a contract which a subsequent legislature cannot impair; the duty of keeping it in repair is not imposed upon supervisors, as in the Act of 1836; it is required to pay all damages for land taken; it is not open and free to every one; it has the right to take toll. Granting this to be a public highway, the railroad company had a right to obstruct it as they did, provided they did not unnecessarily interfere therewith: Act of February 19th 1849, Purd. Dig. 1290, pl. 38; Commonwealth *v.* Erie and North-east Railroad Co., 3 Casey 355;

[Northern Central Railway Co. v. Commonwealth.]

Little Miami Railroad Co. v. Commonwealth, 16 American Railway Reports 285; Nashville and Decatur Railroad Co. v. State, 15 Id. 234; Town Council v. Providence and Springfield Railroad Co., 6 Id. 139. The remedy for the turnpike company is provided in its charter, and this indictment, therefore, will not lie.

*George S. Emig, F. E. Beltzhoover* and *S. Hepburn, Jr.*, for the Commonwealth.—This is a public road. It is open to all people who pay a toll. There is no difference between a road laid out by the authority of the legislature and one laid out by a township under a decree of court. The public pays to pass over either; on the one a toll and on the other a tax, and both are equally public highways: Commonwealth v. Wilkinson, 16 Pick. 175.

The finding of the jury is that the crossing as made is a serious inconvenience and a dangerous obstruction to travel. Surely this impedes the passage or transportation of persons or property along the road, within the meaning of the Act of Assembly.

No matter what remedies there may be for individuals against the turnpike company, the common-law remedy against a party obstructing a public highway remains. Time does not run against the state.

Mr. Justice MERCUR delivered the opinion of the court, October 6th 1879.

It is well recognised law, that an indictment will lie against a corporation, not municipal, for the creation and maintenance of a public nuisance: Reg v. Great North of England Railway, 9 Q. B. 315; Duter v. Troy Railroad Co., 2 Hill 629; Chestnut Hill Turnpike v. Rutter, 4 S. & R. 6; Delaware Div. Canal Co. v. Commonwealth, 10 P. F. Smith 367. This indictment charges the plaintiff in error with having, unlawfully and injuriously, obstructed a public highway. The obstruction in question is in a turnpike, and caused by the manner in which the railroad crosses the same. The special verdict finds the mound, caused by the railroad crossing the turnpike, "amounts to a serious inconvenience and a dangerous obstruction to travel." The mere construction of a railroad track across a public highway, in pursuance of law, is no nuisance: Danville Railroad Co. v. Commonwealth, 23 P. F. Smith 29. But it must be constructed in such a manner as "not to impede the passage or transportation of persons or property along the same:" Act of 19th February 1849, Purd. Dig. 1220. The necessary running of trains across the highway is not the cause of complaint here; it is the construction of a permanent obstacle in the highway, which is "a dangerous obstruction to travel," and the maintenance of it there. Such an obstruction of a public highway is clearly a nuisance. It is contended, however,

9 NORRIS—20

[Northern Central Railway Co. *v.* Commonwealth.]

that a turnpike, constructed by a corporation, is not a public highway.

The main object and purpose of a turnpike is to provide a public highway of a superior quality. That it is not a private road or way is very clear. It is not constructed under the supervision of municipal officers; yet it is by virtue of public authority, and for public purposes. It is for the use of every person desiring to pass over it, on payment of the toll established by law. It differs from a common highway in the fact that it is not constructed, in the first instance, at the public expense, and the cost of construction is reimbursed by the payment of toll imposed by authority of law. Its use is common to all who comply with the law. The same public annoyance and injury arises from its obstruction as if it was a common highway. Hence, in Lancaster Turnpike Co. *v.* Rogers, 2 Barr 114, it was said, that when the turnpike company ceased to use a building erected, in part on the turnpike, as a toll-house, it ceased to be there for a lawful purpose, and became a public nuisance. Common understanding and public policy unite in requiring us to hold that a turnpike is a public highway, in so far that an indictment will lie against one obstructing it, as for a public nuisance. It was so held in Commonwealth *v.* Wilkinson, 16 Pick. 175.

The Statute of Limitations runs not against the Commonwealth. Twenty-four years of continued nuisance create no presumption of a grant therefrom to maintain the same. Nor does the fact that the Act of Assembly gives the turnpike company a specific remedy for an injury to its rights, impair the separate rights of the Commonwealth. The owner of the fee of land over which a common highway passes may maintain trespass against one who deposits and maintains materials thereon: Lewis *v.* Jones, 1 Barr 336. Yet this in no wise bars the right of the Commonwealth to indict for the same act. So in the present case, the right of the Commonwealth to redress a public wrong is very clear. It is no sufficient answer to the wrong committed by the plaintiff in error to prove that it would require an expenditure of from $5000 to $8000, to so lower the bed of the turnpike as to allow it to pass under the railroad. Whether that is the least expensive manner of removing the dangerous obstruction, we are not informed; but if it be, the sum is not so great as to absolve the railroad company from its duty of so making the crossing that it shall not endanger the reasonable passage of persons and transportation of property over the turnpike. The learned judge committed no error.

Judgment affirmed.