# Pittsburgh, McKeesport & Youghiogheny Railroad Company *versus* Commonwealth of Pennsylvania *ex rel.* Attorney General.

1. A turnpike road laid out and constructed under the authority of the charter of a turnpike company is a public highway, and the forfeiture of the charter, and the consequent abandonment of the road by said company, do not affect the existence of the road as a public highway, which should thenceforth be maintained in good order by the municipality within which the road is located.

2. A railroad company, which enters upon and appropriates a portion of a road, which had formerly been a turnpike road, but which, owing to the forfeiture of the turnpike company's charter, had been abandoned by the turnpike company, though it continued to be used by the public, is bound to cause the said road to be reconstructed under the provisions of the Act of February 19th 1849 (P. L. 85), and, in case of refusal, will be compelled by mandamus so to do.

November 8th 1883. Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett and Clark, JJ. Green, J., absent.

Error to the Court of Common Pleas No. 1 of *Allegheny County:* Of October and November Term 1883, No. 222.

A writ of alternative mandamus was issued at the relation of the attorney general, reciting that a portion of a certain public highway, had been entered upon, occupied and obstructed by the construction of the defendant's railroad, and requiring the defendant to cause the same to be reconstructed on the most favorable location, etc., or show cause, etc.

The defendant filed an answer, which was ordered to stand as a return to said writ, to which the relator filed a traverse.

On the trial, before Collier, J., the following facts were undisputed and admitted:

1. That the Birmingham and Elizabethtown Turnpike Company, a corporation under the laws of this state, was incorporated by an Act passed the 31st of March, 1836, and laid out and established in 1836, a turnpike road and public highway, with the right to take toll, &c., in Baldwin township, Allegheny county, Pennsylvania.

2. That said turnpike road was maintained, controlled and

operated by the said company until the year 1881, when the charter of said company was declared forfeited, by legal proceedings at No. 349 September Term 1878, in the Court of Common Pleas No. 1, of Allegheny county (quo warranto), which proceedings were affirmed by the Supreme Court.

3. That said turnpike road was used and traveled as a public highway from its establishment, up to the time of the forfeiture of the company's charter, and has been used and traveled by the public since the forfeiture, up to the time when part of the said turnpike road was taken and occupied by the respondent railroad company.

4. That the respondent, the Pittsburgh, McKeesport & Youghiogheny Railroad Company, a corporation organized under the Act of Assembly of April 4th 1868, and under the laws of this Commonwealth, has, since the forfeiture of the turnpike company's charter, taken, appropriated, used and occupied the said former turnpike road in the location and construction of its railroad, at a place called Risher's Tipple, by constructing its railroad directly across the said former turnpike road, at a grade several feet higher than the said road ; thereby altogether obstructing the travel at that point. Also at another place on said turnpike road, between Franey's tavern and Bird's run, by occupying the entire turnpike road between these points with its railroad and necessary grading, thereby entirely suspending public travel thereon.

The relator presented the following points :

1. The Birmingham and Elizabethtown Turnpike, the road in controversy, did not cease to be a public road or highway by reason of the forfeiture of the company's charter, but continued to be a public road within the meaning of the Act of February 19th 1849, requiring railroad companies to re-construct public roads, changed or taken in the construction of their own roads.

Affirmed. Exception. (First assignment of error.)

2. That, if the jury believed the road set forth in the petition to have been taken by the defendant company substantially as alleged, their verdict must be for the Commonwealth.

Affirmed. Exception. (Second assignment of error.)

The respondent presented the following points :

1. The court is respectfully asked to charge the jury, that after the decree of forfeiture in the case of the Commonwealth against the president and managers of the Birmingham and Elizabethtown turnpike road, at No. 349 September term 1878, in the Court of Common Pleas No. 1 of Allegheny county, the ground occupied by the turnpike road reverted to the owners of the fee, and that under the undisputed evidence in this case there is no public road which defendant company is bound to replace.

[Pittsburgh, &c. R. R. Co. v. Commonwealth.]

Answer. Refused and reserved. Exception. (Third assignment of error.)

2. That the verdict of the jury must be for defendant.

Answer. Refused. Exception. (Fourth assignment of error.)

The court directed the jury to find a verdict for the plaintiff, subject to the question of law reserved as above set forth in the defendant's first point.

Verdict accordingly. The court subsequently, in an opinion by COLLIER, J., entered judgment for the plaintiff on the verdict and reserved question. The defendant took this writ of error, assigning for error the answers to the plaintiff's and defendant's points as above, and the entry of judgment for plaintiff.

*Knox & Reed*, for the plaintiff in error.—We contend that the effect of the forfeiture of the turnpike company's charter was to vacate the turnpike road. If the turnpike company owned the land in fee, it would still belong to the company and should be assets for payment of its debts or distribution among its stockholders. If the turnpike company had only a right of way, then upon forfeiture of its charter and cessation of the use by the company, the land should revert to the owners of the fee. In either case, the railroad company, on appropriating a portion of the bed of the old road under its right of eminent domain, would not be bound to reconstruct the old road. There is no evidence to show how the turnpike company originally obtained possession of the ground, but presumably it entered under the powers of its charter and thereby acquired only an easement of right of way, which necessarily expired on the cessation of the use and reverted to the owners of the fee: Fisher v. Coyle, 3 Watts 407 ; Ridge Turnpike v. Stoever, 6 W. & S. 378; Lancaster Turnpike v. Rogers, 2 Barr 144; P. & L. E. R. R. Co. v. Bruce, 6 Out. 23 ; Jessup v. Loucks, 5 P. F. S. 361; Haldeman v. R. R. Co., 14 Wr. 436 ; State v. New Boston, 11 N. H. 407; People v. Lawrence, 54 Barb. 589. The turnpike road was the private property of the turnpike company, and the forfeiture of its charter destroyed the rights of the public as well as of the company. If the road is to continue, it must be again laid out by law as a public road : West River Bridge Co. v. Dix, 6 How. 538.

*C. A. O'Brien*, for the defendant in error.—A turnpike road is a public highway, which on forfeiture of the charter or on abandonment by the turnpike company, the township supervisors are bound to maintain : Northern Central R. R. Co. v. Com'th, 9 Norris 300 ; Com'th v. Wilkinson, 16 Pick. 175 ;

Erie & N. E. R. R. Co. *v.* Casey, 26 Penna. St. 287; State *v.* Maine, 27 Conn. 641; Craig *v.* People, 47 Ill. 493.

Chief Justice MERCUR delivered the opinion of the court, January 7th 1884.

A turnpike road can be constructed and opened under authority of law only. When used by the public, it becomes a public highway. It was said in Nor. Cen. Railway Co. *v.* Commonwealth, 9 Norris 300, the main object and purpose of a turnpike is to provide a public highway of a superior quality. It is very clear that a turnpike is not a private road or way. It cannot be closed by the stockholders against public use. It is constructed by virtue of public authority, and for public use. It is for the use of every person who desires to pass over it, on payment of the toll established by law. Its use is common to all who comply with the law: Id.

The turnpike now in question was laid out and established in 1836 by a company incorporated on the 31st of March of that year. It was maintained, controlled and operated as such by the company until 1881, when the charter was declared forfeited by due process of law. The turnpike was used and traveled as a public highway from the time it was constructed until the charter of the company was forfeited, and so continued to be used until the plaintiff in error took possession of the portion thereof which gives rise to this contention.

The question is, did the forfeiture of the charter of the turnpike company wholly destroy the character of the road as a public highway? The right of the company to take tolls was ended. Its liability to keep the road in repair was terminated, yet the road as a public highway remained. No judgment or decree had destroyed its character as such. It had been dedicated to public use. It had been accepted and used as a public highway for some forty-five years. The forfeiture of the charter of the turnpike company destroyed the rights of that corporation: yet the road still remained, in fact and in law, a public highway: Craig *v.* The People ex rel. 47 Ill. 495.

Conceding that the title of the owner of the soil in the fee was not destroyed by the use to which the surface was put by the turnpike company, and also that the forfeiture of its charter terminated all its rights as against the owner, yet these facts did not have the effect to vacate the road as a public highway. It was not then taken for private purposes, but remained open for public use.

It is a general rule of law that the title of the owner of land to the fee is not divested by the construction and maintenance of a public highway thereon. His right to the soil, and the right of the public to pass over the ground, both exist at the same time.

[Gibbons's Appeal.]

When the obligation of the turnpike company to maintain the road ceased, the duty was imposed on the municipality in which it was located, to take charge of the road, and put and keep it in repair in the same manner as if it were a county road : Act of 19th April 1844, § 8, Pur. Dig. 1279, pl. 56.

As long as this road continued to be used as a public highway, and had not been vacated by any legal proceedings, the railroad company could not treat it as abandoned. It could not lay its track thereon without incurring the obligation imposed on it by law for the taking and occupying of a public highway. We discover no error in the trial, and the learned judge was clearly right in entering judgment in favor of the plaintiff below on the question of law reserved.

Judgment affirmed.