## In re Lancaster, Ephrata & Lebanon Street Railway Company

Moss, Deputy Attorney General, August 17, 1931.—You have inquired as to the liability of the Lancaster, Ephrata & Lebanon Street Railway Company

to replace the surface on State Highway Route No. 137, made necessary by the removal of the tracks of the company.

That part of State Highway Route No. 137 with which we are concerned was formerly a turnpike operated and maintained by the Clay and Hinkletown Turnpike Company.

On July 26, 1911, the turnpike company entered into an agreement granting to the Ephrata & Lebanon Street Railway Company, predecessor of the Lancaster, Ephrata & Lebanon Street Railway Company, the right to construct and maintain a single track railway from Ephrata to Clay, along the turnpike, under certain terms and conditions which will be referred to hereafter.

We are advised by the Department of Internal Affairs that the Lancaster, Ephrata & Lebanon Street Railway Company was recently sold under foreclosure proceedings, and the purchaser is now removing the tracks of the company. The turnpike was purchased September 12, 1919, by the Commonwealth, the County of Lancaster contributing a portion of the purchase price.

We are of the opinion that it is the duty of the railway company, or its successor by purchase, upon abandonment of its franchise and the removal of its rails from the improved portion of the highway, to replace and restore that portion formerly occupied by its tracks to a condition equal to the balance of the road at the time the removal was effected.

It is fundamental that the highways of the Commonwealth are held in trust for the use of all the citizens thereof in common. They must be kept open and free from nuisance at all times for the benefit of any who would use them. Delegation of the duty of maintenance to any subdivision of the Commonwealth does not change its status as a public highway. The right of the public in highways cannot be bargained away. Special rights of use granted to public service corporations are at all times held in subordination to the superior rights of the public and all necessary and reasonable police ordinances. On this subject, Elliott, in his work on Roads and Streets (4th ed.), section 939, says:

"The general rule is well settled that no contract can be made which assumes to surrender or alienate a strictly governmental power which is required to continue in existence for the welfare of the public. This is especially true of the police power, for it is incapable of alienation."

It has, therefore, been repeatedly held that the duty of street railways to repair the surface of the road between the tracks exists as a common-law duty, irrespective of contract or ordinance permitting them to occupy the highway: Reading v. United Traction Co., 202 Pa. 571.

The duty of repair, which formerly rested on the municipality, is transferred to the traction company, which is given a special use of the highway, and the responsibility for maintaining that portion used by it rests upon the railway company, except when expressly withheld by the grant and its imposition continued on the municipality: Reading v. United Traction Co., 215 Pa. 250, 255.

Where it exists, the duty to repave extends to paving in an improved manner when the necessity for repaving arises, and this is so even though the contract under which the railway company occupies the highway specifically mentions the type of paving to be laid. As was said in Reading v. United Traction Co., 202 Pa. 571, 576:

". . . The requirement to pave with cobblestones was intended to exact from the company something more, not something less, than a reasonable correspondence with the rest of the street. There was no thought of relieving the company from any obligations devolving upon it under the law, but

to impose upon it a duty greater than, in view of the then condition of the streets, the law would have imposed upon it. . . ."

Furthermore, any contract purporting to bargain away the public rights and relieve the railway company of duties specifically imposed upon it by law would be beyond the power of a municipal subdivision of the state to enter into, and could not be enforced: Street Railways, 25 Dist. R. 439.

The question whether the common-law duty resting upon a railway company to repave the street between its tracks includes the duty to restore the road after the abandonment of the railway and removal of its tracks has not arisen in this state. It has, however, come up before the Supreme Court of Ohio in the case of City of Mt. Vernon v. Berman & Reed, 100 Ohio 1, 125 N. E. 116. In that case, the railway company occupied the streets of the City of Mt. Vernon under an ordinance which required it to pave between its rails. On a sale of the company's property, the purchaser thereof refused to repave the surface of the street after removing the rails. The court held that the purchaser succeeded to the obligations of the company and that the obligation to repave the street, to keep it opened and free from nuisance, and to repave it in a manner equivalent to the balance of the road, continued after the sale. The court said, at page 119:

". . . It would be a strange rule which would permit the grantee to violate its contract, to abandon and wholly fail to perform the service to the public for which the franchise was granted, and then to go upon the street and tear up and render it unfit for travel, without restoration; to tear up expensive paving which it was obligated by its contract to pay for, and which it wholly failed to do. . . ."

It is, therefore, the general rule that a street railway company is obliged to restore the surface of the highway upon removal of its rails. Does the general rule apply where the franchise is granted not by a municipality but by a turnpike company which, at the time of the grant, operated and maintained the road?

It has repeatedly been held that a turnpike operated by a private company is none the less a public highway forming a part of the system of highways of the Commonwealth. In Northern Central Ry. Co. v. Com., 90 Pa. 300, the court sustained an indictment against a railway company for maintaining a badly constructed crossing over a turnpike on the grounds that it was a public nuisance, interfering with the free passage of the public on the turnpike. At page 302, the court said, quoting Chief Justice Shaw in Com. v. Wilkinson, 33 Mass. 175:

" 'We think that a turnpike road is a public highway, established by public authority for public use, and is to be regarded as a public easement, and not as private property. The only difference between this and a common highway is, that instead of being made at the public expense in the first instance, it is authorized and laid out by public authority, and made at the expense of individuals in the first instance, and the cost of construction and maintenance is reimbursed by a toll, levied by public authority for the purpose. Every traveller has the same right to use it, paying the toll established by law, as he would have to use any other public highway.' "

Again, in Pittsburgh, etc., Ry. Co. v. Com., 104 Pa. 583, a turnpike was held to be a public highway within the meaning of the statutes requiring a railway to construct a new road where it occupied any existing public highway.

Also, in Derry Township Road, 30 Pa. Superior Ct. 538, at page 541, the court held that a turnpike was a public highway within the meaning of the

statutes requiring termini of any public highway to be in a public highway or place of necessary public resort. The court said in that case, at page 541:

". . . The corporation was the agent of the state for the purpose of constructing the road, the road is a part of the system of public highways of the Commonwealth, and the court below had jurisdiction to add to that system a new road connecting the turnpike with another public highway."

It is apparent from these decisions that a turnpike has the same attributes, as far as the public is concerned, as any other highway. The only difference is that a private agent is vested with the duty of maintenance for which it is given a corresponding right to collect tolls to reimburse it. As turnpikes are public highways, the rights of the public therein cannot be affected to any greater extent than their rights in other highways.

It is our opinion, therefore, that the general rule applies to this road, and the street railway must be held to the same duty to restore the portion formerly occupied by its tracks to a condition equal to the balance of the road.

The contract dated July 26, 1911, between the Clay and Hinkletown Turnpike Company and the Ephrata & Lebanon Street Railway Company, provided, inter alia:

". . . Where the middle of the turnpike is occupied the railway company at its own expense shall reconstruct the turnpike road so that it shall be at least ten and a half feet in width at each side of the rails and the space between the rails shall be macadamized at the expense of the railway company and kept in good order and repair at the expense of the said railway company so as to furnish a safe and even driveway over said tracks so horses, wagons, carriages and vehicles can cross and recross from one side of the tracks to the other and said railway tracks shall be so laid as to strictly conform to the grade of the turnpike road and at each crossing along said turnpike the same provisions as to grade maintenance and cost shall apply and be binding. . . . The railway company shall construct and maintain their roadbed poles and wires so as not to interfere with, obstruct or endanger travel on said turnpike and shall provide, construct and maintain safe and suitable crossings at all lanes and crossings roads. . . ."

The above parts of the contract of 1911 are no more than a restatement of the common-law duty of the company, and the Department of Highways, having succeeded to all the rights of the turnpike company by its purchase in 1919, succeeds to those arising under the contract. See Cheltenham Township v. P. R. T. Co., 292 Pa. 384. These contract obligations relating to the paving of roads are enforceable by the courts: Sayre Borough v. Waverly, etc., Traction Co., 270 Pa. 412. Upon the failure of the railway company to do the work, the state can do it and collect from the company. See Swarthmore Borough v. P. R. T. Co., 280 Pa. 79.

You are, therefore, advised that it is the obligation of the Lancaster, Ephrata & Lebanon Street Railway Company, or its successor, upon removal of the tracks, to replace the surface of the highway in the same condition as the rest of the road at the time of the removal of the tracks.

If the purchaser refuses to comply with a notice from you to restore the surface of the highway, you can, by a suit in equity, compel him to do so. If, in your judgment, the surface should be restored at once, your department would have authority to do the work at the expense of the Commonwealth and collect the cost thereof by suit against the purchaser.

From C. P. Addams, Harrisburg, Pa.