## Commonwealth v. Cenis

*Edward P. Doran,* assistant district attorney, for Commonwealth.

*Carroll Caruthers,* for defendant.

LAIRD, J., January 14, 1944.—Defendant in this case waived summary hearing before a justice of the peace and gave bond for appearance for trial.

Before trial defendant filed a motion to quash the proceedings and to discharge him. Two grounds are set up, which are in brief, first, the offense being alleged to have occurred on the Pennsylvania Turnpike, that "the said Pennsylvania Turnpike is not a highway 'open to the use of the public as a matter of right, for the purpose of vehicular travel' ", and, second, that the information fails to set out the "acts of the defendant which would constitute reckless driving under the act of assembly".

Taking up the second objection first, an examination of the information and an analysis of what is contained in it shows the essence of the charge to be that defendant did operate a motor vehicle west on the Pennsylvania Turnpike and "by crossing a 10-foot dirt medial strip onto the east-bound lane, for no reason whatsoever", did crash or cause his vehicle to collide with a Buick coupé operated by Samuel H. Swan, who was traveling east on said turnpike.

Further, the charge specifies (*a*) the turnpike is a highway; (*b*) defendant operated in a careless manner; (*c*) that the act was done on July 6, 1941, at about 3 p.m., eastern standard time; (*d*) that the act was done in Donegal Township, Westmoreland County,

Pa., about three quarters of a mile east of Donegal Interchange of the turnpike; (*e*) that it was in violation of The Vehicle Code of May 1, 1929, sec. 1001(*a*).

The section referred to was last amended by the Act of June 29, 1937, P. L. 2329, sec. 3, 75 PS §481, and provides:

"Reckless driving is unlawful, and, for the purpose of this act, is construed to include the following:

" (a) Any person who drives any vehicle or street car or trackless trolley omnibus upon a highway carelessly and wilfully, or wantonly disregarding the rights or safety of others, or in a manner so as to endanger any person or property."

The information sufficiently describes an act of reckless driving under the above-cited section of The Vehicle Code.

In respect to the contention that the Pennsylvania Turnpike is not a highway, and that, therefore, the provision of The Vehicle Code does not apply to it, we adopt the argument and follow the authorities cited by Deputy Attorney General Rutter, as set forth in the Commonwealth's brief.

It is obvious that The Vehicle Code applies to the turnpike unless said code expressly or by implication exempts the turnpike from operation of the statute, or unless the legislation creating the turnpike and the commission does so. We must turn, therefore, to these two statutes for our answer.

Section 102 of The Vehicle Code, as amended, 75 PS §2, provides in part:

"The following words and phrases when used in this act, shall, for the purpose of this act, have the meanings respectively ascribed to them in this section, except in those instances where the context clearly indicates a different meaning:

.    .    .    .    .    .    .    .    .    .

" 'Highway'—Every way or place, of whatever nature, open to the use of the public as a matter of right, for purposes of vehicular travel. The term 'highway' shall not be deemed to include a roadway or driveway upon grounds owned by private persons, colleges, universities, or other institutions."

Section 1002 of The Vehicle Code, as amended by the Act of April 15, 1941, P. L. 17, 75 PS §501, provides in part:

"(a) Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed. . . .

"(b) Subject to the provisions of subsection (a) of this section, speeds in excess of the maximum limits hereinafter provided shall be unlawful: . . . [Here follow the various maximum speed limits in subparagraphs 1 to 6, with an additional new paragraph, as follows:]

"7. Seventy (70) miles an hour speed limit: All vehicles when being operated on highways under the supervision and control of a Turnpike Commission, except those otherwise restricted by this act to lower maximum speeds, and except when restricted to lower maximum speeds by such Turnpike Commission upon the highways under its supervision and control or any zones or sections thereof where official signs erected by such Turnpike Commission on the highway facing the traffic to be controlled are displayed."

Is the turnpike a "roadway or driveway upon grounds owned by private persons, colleges, universities, or other institutions"? Clearly it is not owned by a college, university, or other institution. Is it owned by private persons?

Section 4 of the Act of May 21, 1937, P. L. 774, provides, in part:

"That there is hereby created a commission to be known as the 'Pennsylvania Turnpike Commission', and by that name the commission may sue and be sued, plead and be impleaded, contract and be contracted

with, and have an official seal. The commission is hereby constituted an instrumentality of the Commonwealth, and the exercise by the commission of the powers conferred by this act in the construction, operation and maintenance of the turnpike shall be deemed and held to be an essential governmental function of the Commonwealth. The commission shall consist of five members, and the Secretary of Highways shall be a member ex officio. The four remaining members shall be appointed by the Governor by and with the advice and consent of two-thirds of the members of the Senate, and shall be residents of the Commonwealth of Pennsylvania at the time of their appointment and qualification, and shall also at such time have been qualified electors therein for a period of at least one year next preceding their appointment. The appointed members of the commission shall continue in office for terms of four, six, eight and ten years, respectively, from the dates of their appointment and until their respective successors shall be duly appointed and qualified, the term of each appointed member to be designated by the Governor at the time of his appointment; but their successors shall each be appointed for a term of ten years, except that any person appointed to fill a vacancy shall serve only for the unexpired term, and any member of the commission shall be eligible for reappointment. Immediately after such appointments, the members of the commission shall enter upon their duties. Each appointed member of the commission before entering upon his duties shall take the oath prescribed by Article VIII of the Constitution of the Commonwealth. The commission shall elect one of the appointed members as chairman of the commission, and shall also elect a secretary and treasurer who may not be a member of the commission. Three members of the commission shall constitute a quorum who, for all purposes, must act unanimously. No vacancy in the commission shall im-

pair the right of a quorum of the commissioners to exercise all the rights and perform all the duties of the commission. Before the issuance of any turnpike revenue bonds under the provisions of this act, each appointed member of the commission shall execute a bond in the penalty of $25,000, and the secretary and treasurer shall execute a bond in the penalty of $50,000 each, such bond to be approved by the Governor and to be conditioned upon the faithful performance of the duties of his office which bonds shall be filed in the office of the Secretary of the Commonwealth. The commission shall make necessary rules and regulations for its own government and shall have power and authority to acquire, own, use, hire, lease, operate and dispose of personal property, real property and interests in real property . . ."

Section 5 of the said act provides:

"The commission, with the approval of the Department of Highways, is hereby authorized and empowered to acquire by purchase, whenever it shall deem such purchase expedient, such tunnels, whether wholly or partly constructed, rights of way, franchises, easements and other interests in lands, as it may deem necessary for the construction and operation of the turnpike, upon such terms and at such price as may be considered by it to be reasonable and can be agreed upon between the commission and the owner thereof, and to take title thereto in the name of the commission."

Section 6 of said act provides, inter alia:

". . . Title to any property condemned by the commission shall be taken in the name of the commission. . . ."

In short, the commission has title to and owns the turnpike; and the commission is not a private person.

It follows, therefore, that the turnpike is a highway within the meaning of The Vehicle Code, unless a turnpike is for other reasons not such a highway.

Webster's Collegiate Dictionary (3d ed.), page 1037, defines turnpike as a tollgate or a turnpike road; and turnpike road as a road that has or formerly had tollgates, established by law.

In The Northern Central Ry. Co. v. Commonwealth, 90 Pa. 300 (1879), Mr. Justice Mercur, speaking for the court, said, quoting from pages 305 and 306:

". . . It is contended, however, that a turnpike, constructed by a corporation, is not a public highway.

"The main object and purpose of a turnpike is to provide a public highway of a superior quality. That it is not a private road or way is very clear. It is not constructed under the supervision of municipal officers; yet it is by virtue of public authority, and for public purposes. It is for the use of every person desiring to pass over it, on payment of the toll established by law. It differs from a common highway in the fact that it is not constructed, in the first instance, at the public expense, and the cost of construction is reimbursed by the payment of toll imposed by authority of law. Its use is common to all who comply with the law. The same public annoyance and injury arises from its obstruction as if it was a common highway. Hence, in Lancaster Turnpike Co. v. Rogers, 2 Barr 114, it was said, that when the turnpike company ceased to use a building erected, in part on the turnpike, as a toll-house, it ceased to be there for a lawful purpose, and became a public nuisance. Common understanding and public policy unite in requiring us to hold that a turnpike is a public highway. . . ."

In Pittsburgh, McKeesport & Youghiogheny R. R. Co. v. Commonwealth ex rel. Attorney General, 104 Pa. 583 (1883), it was said, quoting from page 586, that:

"A turnpike road can be constructed and opened under authority of law only. When used by the public, it becomes a public highway. . . ."

In accord with the foregoing two cases is People's Telephone & Telegraph Co. v. Berks & Dauphin Turnpike Road, 199 Pa. 411 (1901).

To summarize, a turnpike is a road open to the public as a matter of right, providing the public complies with the law; and complying with the law means vehicular law as well as the payment of tolls established by law or by legally-constituted authority. The turnpike established by the Act of May 21, 1937, supra, is, therefore, a public highway, and is a highway within the meaning of The Vehicle Code; and it follows, of course, that The Vehicle Code in its entirety applies to said turnpike.

Defendant in his brief in support of the motion to quash makes the contention that "traffic on the turnpike is regulated entirely by the commission. The best example of where they have adopted the theory that The Vehicle Code does not apply to the turnpike is the fact that they have established a speed of 70 miles per hour".

In advancing this argument defendant has overlooked the regulation as to speed on the turnpike contained in section 1002(b)7 as amended by the Act of April 15, 1941, P. L. 17, secs. 1 and 2 (75 PS §501), which is quoted above.

It is apt in this connection to point out that the offense with which defendant is charged is alleged to have been committed on July 6, 1941, nearly three months after the legislature, on April 15th of the same year, had fixed the speed limit, so that not only is defendant mistaken as to the absence of speed regulation on the turnpike by The Vehicle Code, but the argument that it (the turnpike) is a "highway" is fortified by the legislature's recognition of it as such.

And now, to wit, January 14, 1944, after argument and after due and careful consideration, it is ordered, adjudged, and decreed that defendant's motion to quash the proceedings be and the same hereby is refused.